

## HARRIS COUNTY, T E X A S 2005 - 09588 JUDICIAL DISTRICT COURT

*Ron Ingalls, Trustee*
    *Plaintiff,*

*vs.*

*Edgewater Private Equity Funds, III, L.P.,*
*Edgewater Funds (A Partnership),*
*Mark McManigal,*
*Gary A. Reece, and*
*Eric Loeffel,*
    *Defendants.*

### PLAINTIFF'S ORIGINAL PETITION
### FRAUD; NEGLIGENT MISREPRESENTATION;
### BREACH OF FIDUCIARY DUTY; AND CONSPIRACY

### DISCOVERY CONTROL PLAN

1.    This case is subject to Level 2 for discovery purposes.

### PARTIES

2.    Plaintiff is the trustee for EpicEdge, Inc. (sometimes referred to as the corporation) a debtor

in liquidation in the U.S. Bankruptcy Court, Western District of Texas (Austin Division).

3.    Defendant Mark McManigal is an individual who at all relevant times, did regular and

systematic business in Houston, Harris County, and Austin, Travis County, Texas. He also

committed torts in both these counties. Service of process may be had on him through the

Texas Secretary of State, as follows:

       Mark McManigal
       The Edgewater Funds
       1900 Main Street, Suite 175
       Irvine, California 92614

4.   Defendant Eric Loeffel is an individual who at all relevant times, maintained his personal residence in Austin, Travis County, Texas. He also committed torts in Harris County. He may be served with process as follows:

> Eric Loeffel
> 3801 Meandering Creek
> Austin, Texas 78746

5.   Defendant Edgewater Private Equity Funds, III, L.P., is a Delaware limited partnership based in Illinois which at all relevant times, did regular and systematic business in Houston, Harris County, and Austin, Travis County, Texas. It also committed torts in both these counties. Service of process may be had on it through the Texas Secretary of State, as follows:

> The Edgewater Funds
> 900 N. Michigan Ave., 14th Floor
> Chicago, IL 60611

6.   Defendant Edgewater Funds is a general partnership based in Illinois which at all relevant times, did regular and systematic business in Houston, Harris County, and Austin, Travis County, Texas. It also committed torts in both these counties. On information and belief, its partners include each of the following individuals: Jim Gordon; Bob Allison; Greg Jones; Mark McManigal; Dave Tolmie; Bob Growney; Bill Cvengros; Jeff Frient; Phil Lorenzini; Erin Prinn Kerrigan; Brian Thompson; and Brian Pitkin. Service of process may be had on it through the Texas Secretary of State, as follows:

> Jim Gordon, Managing Partner
> The Edgewater Funds
> 900 N. Michigan Ave., 14th Floor
> Chicago, IL 60611

7.   Defendants McManigal, Loeffel, Edgewater Private Equity Funds, III, L.P. and Edgewater Funds are referred to throughout this petition jointly, as simply Edgewater.

8. Defendant Gary A. Reece is an individual who at all times relative hereto has resided in Houston, Texas. He may be served with process at his place of employment, as follows:

Highlands Insurance Building
10370 Richmond Avenue, Suite 1150
Houston, TX 77042

## JURISDICTION & VENUE

9. Defendant Gary A. Reece is a resident of Harris County, Texas.

10. The acts complained of in this petition occurred in Harris and Travis Counties, Texas.

11. The damages which were caused by defendants' wrongful actions are well in excess of the jurisdictional limits of this court.

12. Jurisdiction and venue are proper in this court.

## FACTS

13. According to defendant Edgewater Funds' website, as of September 2003:

"Edgewater Funds was founded in 1991 and since that time has grown to over $500 million in assets under management and funded over 80 companies. Edgewater is different from most private equity firms in that its partners all bring decades of operating experience as CEOs of successful public and private companies. As CEOs, the firm's partners Jim Gordon, Bob Allison, Greg Jones, Mark McManigal, Dave Tolmie, Bob Growney, and Bill Cvengros have collectively created over $10 billion in market value. We believe there is no substitute for experience in building valuable growth stage companies.

"Edgewater invests in profitable growth companies which typically have revenues ranging from a minimum of $10-20 million to $200 million+. We focus on industry sectors in which our partners have decades of experience as CEOs.

"Edgewater Funds is headquartered in Chicago, Illinois, with an office in Irvine, California. We have a vast nationwide network of relationships that provides access to proprietary investment opportunities, strategic partners and contacts at the highest level of leading companies worldwide."

14. In defendant Edgewater Funds' website, as of September 2003, it described Epic Edge as:

". . . a systems integration company focused on providing services to governmental and quasi-governmental agencies. The company has long term contracts providing PeopleSoft system integration to the State of Texas and is rapidly expanding this business to other municipalities and institutions, in such areas as the states of California, Washington, Wyoming, and others.. As the company's lead investor, Edgewater has assisted Epic Edge's successful efforts to build a growing and profitable business serving these long term clients."

15. Stock in EpicEdge became publicly traded on the American Stock Exchange in 1999.

16. As part of Edgewater's role as EpicEdge's lead investor, one or more Edgewater partners, including defendant McManigal, took a seat on the board of directors and actively participated in the oversight and management of EpicEdge.

17. In 1999, Edgewater embarked upon a strategy to increase the price of EpicEdge's stock. In the course of implementing this strategy, and in coordination with certain officers and directors of EpicEdge, Edgewater also embarked on a strategy to accelerate the increase in EpicEdge's stock price in an artificial manner that was improperly manipulative. The EpicEdge officers who were involved in this scheme included defendant Gary A. Reece and Eric Loeffel. Reece was a vice president. Loeffel was a president and CEO of EpicEdge.

18. From 1999 until he left the corporation in late 2000, Reece and other officers of EpicEdge knowingly participated in a scheme to artificially "pump" the price of EpicEdge stock. Reece knew this scheme was illegal and wrong when it began, but he continued it anyway until after the time that the price of the stock plummeted in value and became essentially worthless.

19. Reece, along with fellow EpicEdge officer Mark Slosberg, deliberately participated in making material, fraudulent misrepresentations in the furtherance of their conspiracy and

scheme in a number of contexts. One example is that they engaged in fraudulent misrepresentations to senior management employees of Reliant Energy in early 2000. Reece and Slosberg specifically did this with the intention of inducing Reliant into contracting with EpicEdge, so that upon signing a contract with Reliant, the artificially high stock price of EpicEdge would be maintained or increase.

20. Prior to the collapse of EpicEdge and its filing for bankruptcy protection, the corporation and its successor in interest, plaintiff herein, neither knew nor could have known of the fraud perpetrated by the defendants. By operation of law, the damages and claims of the former shareholders of EpicEdge are now the property of the bankruptcy debtor's estate.

21. The purpose of the stock manipulation included the desire to acquire the stock or assets of other companies, using the inflated EpicEdge stock as the purchase consideration. Additionally, defendants were able to deceive unsuspecting victims such as (former) employees, into accepting grossly over-priced stock as an inducement to work for EpicEdge. It further deceived members of the investing public into purchasing EpicEdge stock at grossly inflated prices, which, had the true facts been known, the investments would not have been made.

22. The defendants engaged in a course of conduct in which they made numerous and various false representations concerning EpicEdge's present and future income, assets, stock price, its financial condition, its ability to get financing, and its projected growth.

    a. At the time these misrepresentations were made, each of the defendants either knew or should have known that they were false.

    b. At the time these misrepresentations were made, each of the defendants either knew

or should have known that persons in the position of the plaintiff herein, would receive and rely upon these misrepresentations in the normal and ordinary course of their business dealings with EpicEdge. It was, therefore, reasonably foreseeable that plaintiff and members of the investing public, would rely on the misrepresentations of the defendants.

23.     In reliance on the misrepresentations of the defendants, numerous persons were induced into doing business with the corporation, selling their companies to EpicEdge, investing in its stock, or accepting employment. Thus, the corporation itself was severely damaged by the defendants' conduct in that its cash was drained, it forfeited legitimate business opportunities, and its assets were wasted. In so doing, EpicEdge forfeited opportunities to engage in profitable business ventures. By the time the corporation learned of the defendants' scheme to fraudulently manipulate the price of the stock, it was too late. The price had already dropped from approximately $20 per share in early 2000 to mere pennies by the end of that year. Talented and honest employees had fled the company. Thus, the precipitous drop occurred virtually overnight when, on information and belief, defendants and/or non-party participants in the "pump" scheme quickly "dumped" their shares to realize their illicit profits. Concurrently, the Edgewater defendants clamped down on EpicEdge's ability to obtain working capital.

24.     The falsely inflated price of EpicEdge stock created a market value in the tens of millions of dollars. In the end, the company's market capitalization was worthless or virtually worthless.

25.     As EpicEdge's self-described, "lead-investor" which helped it run its business, Edgewater knew or should have known that the price of EpicEdge stock was being artificially

PLAINTIFF'S ORIGINAL PETITION          © BREWER & PRITCHARD, P.C. 2005                              PAGE 6

manipulated by its management.

26. As a member of a joint enterprise with EpicEdge, Edgewater is responsible for the actions of EpicEdge's management in manipulating the stock and in defrauding customers like Reliant, employees, and companies which were acquired by EpicEdge.

27. Defendants's fraud or negligent misrepresentation caused actual damage in an amount equal to the market value of EpicEdge before and after their fraud.

28. The defendants's misrepresentations were committed knowingly or alternatively, with reckless disregard for the truth. Defendants intended that the corporation to which plaintiff succeeds, would rely on these misrepresentations, and it did so rely to its substantial detriment. EpicEdge would not have purchased the corporations which it did purchase, hire the employees it did hire, nor otherwise conduct itself in the manner it did, but for the misrepresentations of Defendants.

## CAUSES OF ACTION

### I. FRAUD

29. Plaintiff reiterates and adopts each and every allegation of all paragraphs as if set forth herein verbatim.

30. The defendants made material misrepresentations and false statements in connection with the financial condition of EpicEdge for the years 1999 through 2002. They also knowingly participated in structuring the secret and fraudulent transaction with Reliant—as well as other companies, and either knew or should have known that such transactions would render EpicEdge's financial statements false and fraudulent.

31. Each of the defendants knew that the statements they and/or EpicEdge was making were false.

32. *Alternatively*, the defendants made the statements recklessly, as positive assertions, without any knowledge of their truth or falsity.

33. The defendants each intended that the corporation, to which plaintiff is successor in interest, specifically would rely and act upon the statements, in a circumstance in which the defendants intended or had reason to expect persons such as plaintiff would be influenced.

34. *Alternatively*, the defendants had reason to expect that persons the corporation to which plaintiff succeeds, would rely and act upon the statements, in a circumstance in which the defendants intended or had reason to expect the corporation would be influenced.

35. The corporation did act in reliance upon the false statements and misrepresentations of the defendants in a circumstance which was of a type which each of them intended or had reason to expect that it would be influenced.

36. Plaintiff suffered financial injury in excess of the jurisdictional minimal limits of the court in that the corporation was ruined by the misconduct of the defendants, because of its reasonable, justifiable and predictable reliance on the defendants' material, intentionally false statements and misrepresentations.

## II. NEGLIGENT MISREPRESENTATION

37. Plaintiff reiterates and adopts each and every allegation of all paragraphs as if set forth herein verbatim.

38. The defendants were actively involved in the management of the affairs of EpicEdge at all

relevant times. As such, each of the defendants acted in the course of their business Each defendant had a pecuniary interest in the business of EpicEdge.

39.   The defendants' statements concerning the financial condition and stock value of EpicEdge contained information which the defendants knew or should have known would be used for the guidance of the corporation in its business transactions with defendants. These statements of the defendants included statements which were false.

40.   The defendants failed to exercise reasonable care or competence in obtaining and/or communicating the information they communicated to the corporation.

41.   In justifiable reliance upon the information provided by the defendants, the corporation took actions and refrained from taking actions which caused it substantial damage and even the demise of the corporation itself.

## III. BREACH OF FIDUCIARY DUTY

42.   Plaintiff reiterates and adopts each and every allegation of all paragraphs as if set forth herein verbatim.

43.   As officers, members of the board of directors of EpicEdge, or persons acting in concert with fiduciaries of the corporation, each of the defendants owed a fiduciary duty to the corporation, as the defendants were actively involved in the management of the affairs of EpicEdge at all relevant times.

44.   *Alternatively,* McManigal, Loeffel and Reece, as directors and officers respectively, owed fiduciary duties to the corporation and its shareholders.

45.   As members of a conspiracy and members of a joint enterprise with McManigal, Loeffel and

Reece, Edgewater is jointly and severally liable for their breach of fiduciary duty.

46.     The defendants' reckless misconduct, misrepresentations and/or fraud, as alleged herein, fell well below the standard required of a fiduciary.

47.     The defendants failed to exercise reasonable care or competence in obtaining and/or communicating the information they communicated to the corporation.

48.     In justifiable reliance upon the information provided by the defendants, EpicEdge undertook actions and failed to take other actions which it would not have done but for the actions of the defendants.

49.     As a result of defendants' breach of fiduciary duty and conspiracy to breach fiduciary duty, EpicEdge suffered pecuniary loss insofar as the corporation itself was destroyed.

## IV. CONSPIRACY

50.     Plaintiff reiterates and adopts each and every allegation of all paragraphs as if set forth herein verbatim.

51.     Each of the defendants conspired together to ensure that stock in EpicEdge would be artificially inflated using false statements.

52.     With the active participation of the defendants herein, each of them manipulated the price of EpicEdge stock for the specific purpose of using it to make acquisitions of personnel and companies, and to thereby line their own pockets with ill-gotten gain.

53.     By reason of their conspiracy with each other, each of the defendants is jointly and severally liable to plaintiff, as successor in interest to the corporation EpicEdge, for actual and punitive damages, for each cause of action alleged herein.

## V. JOINT OR COMMON ENTERPRISE

54. The defendants have or had a common or joint interest or enterprise. As a result, they are each jointly and severally liable for the acts of the other inasmuch as they each contributed to the carrying out of that joint or common enterprise.

55. The defendants were participants in a joint enterprise or conspiracy with each other. Further, it was foreseeable that any one of the defendants herein might engage in the sort of misconduct listed in §41.008(c), Texas Civil Practice and Remedies Code. As stated herein, Reece admittedly engaged in such misconduct, *i.e.,* fraudulent stock price manipulation. Therefore, each of the defendants should be deemed to have violated §32.47, Texas Penal Code. Likewise, each defendant is liable for each of the torts of the other.

## VI. EXEMPLARY DAMAGES

56. Plaintiff reiterates and adopts each of the allegations in the preceding paragraphs.

57. The wrongful conduct of each of the defendants was willful, wanton and malicious, and done with the intent of causing injury to plaintiff. Accordingly, plaintiff is entitled to punitive and exemplary damages from each defendant herein, jointly and severally.

58. Plaintiff is entitled to and hereby seeks punitive damages *without limitation* against all defendants, jointly and severally, under §41.008(c)(12), Texas Civil Practice & Remedies Code.

## VII. CONDITIONS PRECEDENT

59. All conditions precedent have either occurred, been satisfied, or been excused.

## VIII. AVOIDANCES

60.     Plaintiff asserts all legal, statutory or equitable affirmative defenses or avoidances under the applicable Rules of Civil Procedure, including without limitation, laches, estoppel (including promissory, equitable, legal, judicial or otherwise), limitations, tolling, the discovery rule, unclean hands, waiver, conditions precedent, recision, restitution, failure of consideration, fraud, fraud by concealment or omission, spoliation, criminal misconduct, right to punitive, exemplary or statutory enhancement damages without non-jury limitation, and such other avoidances or affirmative defenses which might be suggested by discovery or the evidence at trial.

## IX. DEMAND FOR RELIEF

61.    Plaintiff demands trial by jury and judgment as follows:

   a.     Actual damages against defendants, jointly and severally, for all damages sustained as a result of their joint or separate wrongdoing, in an amount to be proven at trial;

   b.     Punitive, statutory enhancement or other exemplary damages in favor of plaintiff and against defendants, on all causes of action;

   c.     All costs in prosecuting this action, as well as applicable interest and attorney fees; and

   d.     Such other and further relief, whether legal, equitable, or statutory to which plaintiff may be justly entitled, including damages, recision or restitution.

## X. Jury Demand

62.     Plaintiff demands trial by jury on all issues under the 7th Amendment to the United States
Constitution, including without limitation, punitive damages. Plaintiff demands all punitive
damages which it may be awarded without respect to any purported statutory or other
limitation thereon which violates the Bill of Rights to the United States Constitution,
including the 7th Amendment or which violates the common law as referred to therein.

Respectfully submitted,

BREWER & PRITCHARD, P.C.

J. Mark Brewer, 02965010
Three Riverway, 18th Floor
Houston, Texas  77056
Phone:  (713) 209-2950
Fax:     (713) 659-5302
Email:  brewer@bplaw.com
Attorney for Plaintiff, Ronald Ingalls

PLAINTIFF'S ORIGINAL PETITION

© BREWER & PRITCHARD, P.C. 2005

PAGE 13