UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **Ron Ingalls, Trustee of Estate of** § <br> **EpicEdge, Inc.,** § <br> § <br> Plaintiff, § <br> VS. § <br> § <br> **Edgewater Private Equity Fund III, L.P.,** § <br> **Edgewater Funds,** § <br> **Mark McManigal,** § <br> **Gary A. Reece,** § <br> **and** § <br> **Eric Loeffel,** § <br> § <br> Defendants. § | **CIVIL ACTION NO. H-05-1392** |

## MEMORANDUM AND ORDER

This case arises from a decline in the stock price of EpicEdge, Inc., and EpicEdge's subsequent bankruptcy. Individual Defendants, who are former officers or directors of EpicEdge, Inc., are accused of collaborating with Defendants Edgewater Private Equity Fund III, L.P. and Edgewater Funds (collectively, "Edgewater"), EpicEdge's largest investor, in a "pump and dump" scheme to manipulate the price of EpicEdge stock. Plaintiff Ron Ingalls, Trustee of EpicEdge's bankruptcy estate, claims that Defendants engaged in fraud, negligent misrepresentation, breach of fiduciary duty, and civil conspiracy, in violation of Texas state law and § 10(b) of the Securities Act of 1934 and Rule 10b-5 promulgated thereunder.

Defendants now move to dismiss Ingalls's Second Amended Complaint ("Complaint") as untimely and for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). After considering the parties' filings and the applicable law, the Court finds that Defendants' motion to dismiss should be and hereby

is **GRANTED** and that Ingalls's Second Amended Complaint should be and hereby is **DISMISSED**.

I. BACKGROUND[1]

EpicEdge became a publicly traded company in 1999. Throughout 2000, Edgewater made a series of purchases of EpicEdge common stock, accumulating at least 8.6% of the outstanding shares by September 2000. EpicEdge's stock subsequently declined sharply in value, from a high of $25.44 in the first quarter of 2000 to a low of $0.25 by the end of the year.

Over the next two years, Edgewater continued to interact extensively with EpicEdge, lending it millions of dollars in exchange for shares of convertible preferred stock. In May 2002, EpicEdge announced that the Securities and Exchange Commission (SEC) was investigating sales of EpicEdge stock between 1999 and 2000. Throughout the remainder of 2002 and the first months of 2003, Edgewater continued to accumulate shares of EpicEdge convertible preferred stock. In March 2003, the American Stock Exchange (AMEX) suspended trading in EpicEdge stock and asked the SEC to delist the stock. The SEC granted the request on March 24, 2003, at which time Edgewater owned more than half of the issued and outstanding shares of EpicEdge common stock.

In November 2003, EpicEdge filed for Chapter 7 bankruptcy. Ingalls, the bankruptcy trustee, filed this suit on February 11, 2005, contending that Defendants engaged in an illegal scheme to inflate the price of EpicEdge stock in order to sell their own shares at an artificially high profit. This "pump and dump" scheme allegedly led to the decline in EpicEdge's share price, driving the company into bankruptcy. Ingalls

---

[1] For purposes of this motion to dismiss, the Court assumes that all facts are as alleged in Ingalls's Second Amended Complaint.

alleges violations of §§ 10(b) and 20(a) of the Securities Act of 1934, and Rule 10b-5 promulgated thereunder; fraud; negligent misrepresentation; breach of fiduciary duty; and conspiracy.

## II.    DEFENDANTS' MOTION TO DISMISS

### A.    Standard of Review

Defendants have filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6).  A district court should dismiss a claim under Rule 12(b)(6) "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986).  To survive a motion to dismiss, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quoting 3 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1216 at 156-59 (2d ed. 2004)).  "In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations . . . ." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (internal quotation marks omitted).

### B.    The Exchange Act Claims

Until 2002, claims brought under section 10(b) of the Securities Act of 1934 and Rule 10b-5 were governed by a one-year statute of limitation and a three-year statute of repose.  *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364

(1991) ("Litigation instituted pursuant to § 10(b) and Rule 10b-5 . . . must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation."). In 2002, Congress enacted the Sarbanes-Oxley Act ("Sarbanes-Oxley"), which extended the statute of limitation to two years and the statute of repose to five years. *See* 28 U.S.C. § 1658(b) (2002). Courts have held, however, that Congress did not intend this provision to apply retroactively to suits that became time-barred before Sarbanes-Oxley's enactment. *See In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, No. MDL-1446, Civ. A H-01-3624, 2004 WL 405886, at *17-*18 (S.D. Tex. Feb. 25, 2004) (quoting *Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297, 309-10 (2d Cir. 2003), *cert. denied sub nom. Daiwa Secs. Am. Inc. v. Kayne*, 540 U.S. 966 (2003)); *see also Greenburg v. Hiner*, 359 F. Supp. 2d 675, 681 (N.D. Ohio 2005) (collecting cases).

This case was instituted on February 11, 2005, well after Sarbanes-Oxley took effect. (*See* Pl.'s Orig. Pet. at 1.) However, Ingalls is not entitled to the benefit of the two-year limitation period, because his claim was already time-barred when Sarbanes-Oxley was passed in 2002. As Defendants correctly point out (Defs.' Mot. to Dismiss at 10), Ingalls's claim arose in 2000, when the price of EpicEdge stock crashed. The one-year statute of limitation then in effect ran out by the end of 2001.

Ingalls points out that Defendants allegedly continued to make false and misleading statements even after the 2000 stock crash. (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 6.) That crash, however, constituted a "storm warning" that triggered EpicEdge's (and, by imputation, Ingalls's) duty to inquire:

> A plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent

> investigation, and is charged with the knowledge of all facts such an investigation would have disclosed. . . . Investors are not free to ignore "storm warnings" which would alert a reasonable investor to the possibility of fraudulent statements or omissions in his securities transaction.

*Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988). After the price drop, reasonable diligence would have uncovered EpicEdge's financial problems, notwithstanding any false statements, misrepresentations, or material omissions by Defendants. Therefore, the statute of limitation for Ingalls's Securities Act claims began to run at the time of the stock decline, which in no event occurred later than December 2000 (*see* 2d Am. Compl. at 12, ¶ 50), and expired, at the latest, in December 2001, well before Sarbanes-Oxley took effect. Ingalls's Securities Act claims are, therefore, time-barred.

### C. The Fraud Claim

Under Texas law, the elements of fraud are:

> (1) a material misrepresentation was made; (2) it was false; (3) when the representation was made, the speaker knew it was false or the statement was recklessly asserted without any knowledge of its truth; (4) the speaker made the false representation with the intent that it be acted on by the other party; (5) the other party acted in reliance on the misrepresentation; and (6) the party suffered injury as a result.

*Alpert v. Crain, Caton & James, P.C.*, Nos. 01-04-00101-CV, 01-04-00484-CV, 2005 WL 2385339, at *6 n.4 (Tex. App.—Houston Sept. 22, 2005). The Federal Rules of Civil Procedure require a plaintiff alleging fraud, or claims sounding in fraud, to comply with a heightened pleading standard. *See* FED. R. CIV. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). The Fifth Circuit has applied Rule 9(b) to state law fraud claims. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("We see no principled

reason why the state claims of fraud should escape the pleading requirements of the federal rules . . . .").

"Pleading fraud with particularity in this circuit requires 'time, place[,] and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Id.* (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). "At a minimum, [this] requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

Ingalls's Complaint does not satisfy the Rule 9(b) standard. First, it fails to allege that any specific false statement or misrepresentation was made by any Defendant. The only statements quoted in the Complaint are attributed to EpicEdge, and Ingalls has supplied no detail to support the imputation of those statements to Defendants. Moreover, Ingalls has not provided any "who, what, when, where, and how" information demonstrating that Defendants knew that the quoted statements were false when made.

The Complaint also fails adequately to plead fraud by nondisclosure. Although it states repeatedly that Defendants did not inform EpicEdge of the "pump and dump" scheme, the Complaint does not include facts tending to show that Defendants either knew of the scheme or owed EpicEdge a duty to disclose the scheme. Absent such detail, Ingalls's fraud claim does not satisfy Rule 9(b) and must, therefore, be dismissed.

### D. The Negligent Misrepresentation Claim

#### 1. Timeliness.

Under Texas law, a claim of negligent misrepresentation must be brought within two years of the accrual of the cause of action. *See Kansa Reinsurance Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1371 (5th Cir. 1994). As Ingalls concedes, his negligent misrepresentation claim accrued more than two years before he filed the instant suit. His negligent misrepresentation claim is, therefore, time-barred unless the limitation period was tolled by EpicEdge's bankruptcy filing.

Section 108(a) of the Bankruptcy Act permits a bankruptcy trustee to "commence an action in a nonbankruptcy proceeding within the period allowed for such proceeding *or* within two years after the order for relief, whichever is later." *United States for Use of American Bank v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (5th Cir. 1991) (citing 11 U.S.C. § 108(a) (1991)). Section 108(a) applies only when "such period has not expired before the date of the filing of the petition." 11 U.S.C. § 108(a). Ingalls argues that his negligent misrepresentation claim arose in 2001 and had not expired at the time of EpicEdge's bankruptcy filing in September 2003. (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss at 5.)

Although Ingalls does not, in his opposition to Defendants' motion to dismiss, explain precisely which events in 2001 gave rise to his negligent misrepresentation claim, an examination of the Second Amended Complaint suggests that the claim is based upon a press release issued by EpicEdge in October 2001, which "state[d] that EpicEdge [was] a leading information technology consulting firm, but fail[ed] to make any mention of the financial problems of the company." (2d Am. Compl. at 6.) Because fewer than two

years passed between the issuance of the press release and EpicEdge's bankruptcy filing in September 2003, a negligent misrepresentation claim based upon the press release is not time-barred. Any negligent misrepresentation claim arising from events occurring before September 2001 is, however, precluded by the statute of limitation.

### 2. The substantive claim.

Under Texas law, a claim for negligent misrepresentation comprises four elements:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005). Negligent misrepresentation claims are subject to the more relaxed pleading requirements of FED. R. CIV. P. 8(a). *See id.* at 396. Ingalls's Complaint fails, however, to satisfy even this standard.

As explained above, in the discussion of Ingalls's fraud claim, Ingalls has not pleaded any specific statement by any Defendant. Similarly, he has provided no justification for imputing EpicEdge's allegedly false statements to any Defendant. Ingalls has, therefore, failed to plead the first element of the negligent misrepresentation claim.

Ingalls has also neglected to plead the fourth prong of the claim: justifiable reliance. "As the words of the phrase imply, *justifiable reliance* comprises two elements: (1) the plaintiff must in fact rely on the information; and (2) the reliance must be reasonable." *Scottish Heritable Trust v. Peat Marwick Main & Co.*, 81 F.3d 606, 615

(5th Cir. 1996).  In *Scottish Heritable Trust*, the Fifth Circuit held that the plaintiff's reliance upon the defendant's inaccurate audit reports was not justifiable where, *inter alia*, independent evidence suggested that there were problems with the valuation of the stock at issue.  *Id.*  In this case, the Complaint demonstrates on its face that the market price of EpicEdge stock had dropped almost to zero long before EpicEdge issued the 2001 statements upon which the negligent misrepresentation claim is apparently based.  The stock crash clearly indicated (though the statements did not) that the company had "financial problems" (2d Am. Compl. at 6).  Therefore, EpicEdge's purported reliance upon the alleged misrepresentation was not justifiable.  Because the Complaint fails to plead two of the four required elements of a negligent misrepresentation claim, that claim cannot survive Defendants' motion to dismiss.

      E.      **The Breach of Fiduciary Duty Claim**

Defendants argue that Ingalls has not pled this claim with the specificity required by Rule 9(b).  (Defs.' Mot. to Dismiss at 21-22.)  Ingalls replies that Rule 9(b) does not apply to claims of breach of fiduciary duty.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 16.)  It is true that "[a]llegations of breach of fiduciary duty are not *necessarily* fraud allegations." *In re Electronic Data Systems Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 672 (E.D. Tex. 2004) (emphasis added).  In fact, Rule 9(b) generally "does *not* extend to claims of breach of fiduciary duty." *United States v. Rivieccio*, 661 F. Supp. 281, 290 (E.D.N.Y. 1987) (emphasis added); *see also Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995) ("[W]e have never applied Rule 9(b) in cases in which the plaintiffs allege a breach of fiduciary duty but do not allege fraud."); *United States v. Kearns*, 595 F.2d 729,

733 n.18 (D.C. Cir. 1978) ("We note . . . that the claim of breach of fiduciary duty would not appear to be a matter of fraud covered by [Rule 9(b)] . . . .").

"However, courts have applied the heightened pleading standards of Rule 9(b) to . . . breach of fiduciary duty claims that are predicated on fraudulent conduct." *In re Westar Energy, Inc. ERISA Litig.*, No. 03-4032-JAR, 2005 WL 2403832, at *4 (D. Kan. Sept. 29, 2005); *see also Tigue Investment Co. v. Chase Bank of Texas, N.A.*, No. Civ. A.3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004). "In such cases, particularity is only required to the extent that a plaintiff in fact alleges fraud." *Tigue*, 2004 WL 3170789, at *2.

In this case, Ingalls's breach of fiduciary duty claim rests on an allegation of fraud. He contends that Defendants breached their fiduciary duties to EpicEdge by defrauding it of money and business opportunities. (*See* 2d Am. Compl. at 12, 17.) Because the claim sounds in fraud, Rule 9(b) applies.

In the Fifth Circuit, Rule 9(b) "require[s] specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they were fraudulent." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

> Furthermore, a complaint alleging fraud may not group the defendants together: Rule 9(b) requires that allegations of fraud need to be pled with specificity. . . . This specificity requires that 'at a minimum' for each alleged misstatement or omission, plaintiffs must plead specific facts concerning, for example, when *each* defendant or other corporate officer learned that a statement was false, how *that* defendant learned that the statement was false, and *the particular* document or other source of information from which the defendant came to know that the statement was false. . . . Group pleading fails to satisfy the requirement that the who, what, where, why, and when of the fraud be specified.

*Glaser v. Enzo Biochem, Inc.*, 303 F. Supp. 2d 724, 734 (E.D. Va. 2003) (internal citation omitted), *aff'd in part and rev'd in part on other grounds*, 126 Fed. Appx. 593 (4th Cir. 2005).

Ingalls's breach of fiduciary duty claim groups all Defendants together, in violation of Rule 9(b).  The only specific assertions concern Defendant Reece, who, according to the Complaint, "admitted to knowing that[,] during the period between 1999 and 2000[,] certain members of [EpicEdge's] management and certain shareholders . . . were involved in a scheme to pump the price of the stock and then dump the stock." (2d Am. Compl. at 3.)  Nowhere, however, does the Complaint specify precisely when, where, or how Reece obtained this information.  The Complaint also asserts that Reece lied to a trading partner of EpicEdge's in negotiating a contract. (*Id.* at 3-4.)  Again, no detail is provided as to the circumstances surrounding this event.  Moreover, the Complaint fails to explain how Reece's alleged misrepresentation to another company amounts to a breach of a fiduciary duty to EpicEdge.

The Complaint also contains vague allegations against Edgewater, stemming from its alleged failure to "provide any material representation regarding the pump and dump scheme that was occurring." (*Id.* at 5-6.)  No supporting detail is provided to demonstrate when, where, or how – or, indeed, whether – Edgewater became aware of the scheme. As for Defendants Loeffel and McManigal, the Complaint provides a wealth of information concerning their positions, compensation, and stock purchases but never describes the circumstances giving rise to their supposed knowledge of and involvement in the stock price manipulation.  Because it is not pled with sufficient specificity against any Defendant, therefore, Ingalls's breach of fiduciary duty claim must fail.

  **F.**  **The Conspiracy Claim**

In Texas, civil conspiracy is defined as "a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1979). It is a "derivative tort," liability for which must be based upon "participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Because Ingalls has failed properly to plead any underlying tort, his conspiracy claim must be dismissed. *See Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1254 (5th Cir. 1997) (holding, in a case involving an analogous Louisiana law, that "plaintiff's conspiracy to commit fraudulent misrepresentation claim is defective because the underlying fraudulent misrepresentation claim is defective").

**CONCLUSION**

Ingalls's Second Amended Complaint is hereby **DISMISSED**. Count I of the Complaint, asserting claims under the Securities Act of 1934, is **DISMISSED WITH PREJUDICE** as time-barred. Counts II and IV, alleging fraud and breach of fiduciary duty, are **DISMISSED WITHOUT PREJUDICE** for failure to satisfy the heightened pleading requirement of FED. R. CIV. P. 9(b). Counts III and V, asserting claims for negligent misrepresentation and conspiracy, are **DISMISSED WITHOUT PREJUDICE** for failure to satisfy the pleading requirements of FED. R. CIV. P. 8(a). All pending motions are **DENIED** as moot.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 17th day of October, 2005.

                                        KEITH P. ELLISON
                                        UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**